IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| *In re*: | § | |
| | § | |
| SAVE OUR SPRINGS (S.O.S.) | § | CASE NO. 07-10642 FM |
| ALLIANCE, INC., | § | |
| | § | |
| | § | |
| *Debtor* | § | |

**DEBTOR'S PLAN COMBINED WITH DISCLOSURES FOR
A SMALL BUSINESS CASE PURSUANT TO 11 U.S.C. §1125(f)**

I.  **INTRODUCTION**

   A. **General Information Concerning This Case and Regarding Plans and Disclosures.**

   SAVE OUR SPRINGS (S.O.S.) ALLIANCE, INC. (referred to in this document as the "Debtor", "SOS Alliance" or "the Alliance", filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101 et seq. ("the Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("the Bankruptcy Court") on April 10, 2007 ("the Filing Date"). The Chapter 11 proceeding commenced by that filing has been pending since that time before the Honorable Frank R. Monroe, United States Bankruptcy Judge, under case number 07-10642-FM. The Debtor has remained in possession of its property, and has continued to conduct its own financial affairs, as debtor-in-possession, pursuant to Section 1108 of the Bankruptcy Code.

   This Plan Combined With Disclosures is provided pursuant to Section 1125 of the Bankruptcy Code to all of the Debtor's known creditors and other parties in interest in connection with the solicitation of acceptance of Debtor's Plan of Reorganization ("the Plan"). The details of the Plan itself are set out in Section IV of this document. The purpose of the disclosures contained in Sections I through III of this document and in the attached exhibits is to provide you with such information as will enable a hypothetical, reasonable investor, typical of the holders of claims against the Debtor, to make an informed judgment in exercising his, her or its right either to accept or reject the Plan. In addition to this document, you will be provided with a ballot which you may use to vote your acceptance or rejection of the Plan. That ballot should be completed and returned to the attorney for the Debtor, so as to be received prior to the deadline stated on the ballot. The notice of the hearing on Confirmation of the Plan will be provided by the Bankruptcy Court. While you are invited to attend this hearing, you need not be present in order to have your vote considered.

   Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by the creditors in any given class, at least sixty-six and two-thirds percent (66-2/3%) in amount of allowed Claims and fifty-one percent (51%) in number of allowed Claims voting in that class must accept the Plan. Whether or not you expect to be present at the hearing, you are urged to fill in, date, sign and properly mail the acceptance form to the attorney for the Debtor, B. Weldon Ponder, Jr., at Building 3, Suite 200, 4601 Spicewood Springs Road, Austin, Texas 78759-7841. In the event that the requisite acceptances are not obtained, the Plan may nevertheless be confirmed by the Bankruptcy Court pursuant to the provisions of Section 1129 of the Bankruptcy Code. Those provisions may permit Confirmation in spite of a rejecting class (or classes), if the Bankruptcy Court finds that the Plan provides fair and equitable treatment to the rejecting class or classes, and meets other tests.

B. **Disclaimers.**

THE INFORMATION CONTAINED IN THIS DOCUMENT HAS BEEN SUBMITTED BY THE DEBTOR, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DOCUMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN WHICH IS NOT CONTAINED IN THIS DOCUMENT NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION IN HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED IN THIS DOCUMENT SHOULD BE REPORTED TO THE DEBTOR, WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DOCUMENT IS CORRECT, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE ITS ACCURACY. THE INFORMATION CONTAINED IN THIS DOCUMENT AND IN THE ATTACHMENTS HERETO HAS NOT BEEN INDEPENDENTLY AUDITED EXCEPT AS SPECIFICALLY REFERENCED HEREIN. UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DOCUMENT ARE MADE AS OF THE DATE HEREOF. THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY UPON BOOKKEEPING PERFORMED BOTH INTERNALLY AND BY OUTSIDE SERVICES. THIS DOCUMENT CONTAINS BOTH THE PLAN AND ALL DISCLOSURES DEBTOR IS REQUIRED TO MAKE PURSUANT TO 11 U.S.C. 1125. EACH CREDITOR, INTEREST HOLDER, AND PARTY-IN-INTEREST IS URGED TO REVIEW THE PLAN AND ACCOMPANYING DISCLOSURES IN FULL PRIOR TO VOTING ON THE PLAN TO INSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THE DISCLOSURES.

THE DEBTOR MAKES NO REPRESENTATIONS WITH RESPECT TO THE TAX EFFECTS (LOCAL, STATE OR FEDERAL) ON CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY THE DEBTOR. CREDITORS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PERSONAL PROFESSIONAL ADVISORS IF THEY HAVE ANY SUCH QUESTIONS.

CONFIRMATION OF THE PLAN WILL DISCHARGE THE REORGANIZED DEBTOR FROM ALL OF ITS PRE-FILING DATE DEBTS BY VIRTUE OF THE ORDER OF CONFIRMATION OR SECTION 1141(d) OF THE BANKRUPTCY CODE, EXCEPT AS PROVIDED FOR SPECIFICALLY IN THE PLAN. CONFIRMATION MAKES THE PLAN BINDING UPON THE REORGANIZED DEBTOR AND ALL CREDITORS AND OTHER PARTIES IN INTEREST, REGARDLESS OF WHETHER OR NOT THEY HAVE ACCEPTED THE PLAN. IN ADDITION, PURSUANT TO SECTION 1141(d)(1)(B) OF THE BANKRUPTCY CODE, CONFIRMATION OF THE PLAN WILL RESULT IN THE TERMINATION OF ALL RIGHTS AND INTERESTS OF CREDITORS AS PROVIDED FOR IN THE PLAN, AND THE RESERVED INTERESTS AND EXCLUDED ASSETS OF THE REORGANIZED DEBTOR WILL REMAIN THE PROPERTY OF THE REORGANIZED DEBTOR, FREE AND CLEAR OF ALL CLAIMS AND INTERESTS OF CREDITORS.

**II.     DEFINITIONS**

As used throughout this document, the following terms shall have the meaning indicated:

1.      "ADMINISTRATIVE CLAIM" means a claim or expense entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2.      "BANKRUPTCY CODE" means Title 11, United States Code.

3.      "BANKRUPTCY COURT" means the United States Bankruptcy Court for the Western District of Texas and the judges of said court.

4.      "CLAIM" means a duly listed or timely filed claim against the Debtor or against property of the Estate, which is allowed in accordance with the provisions of the Bankruptcy Code and the Rules of Bankruptcy Procedure.

5.      "CONFIRMATION OF THE PLAN" or "CONFIRMATION" means the Bankruptcy Court's entry of an order confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

6.      "CREDITOR SETTLEMENT FUND" means the depository account to be established by the Debtor pursuant to Paragraph 7.1 of the Plan, which will be used for the purpose of funding payments to holders of allowed Claims in Classes 4, 5 and 6, as such classes are defined and identified in Article IV of the Plan.

7.      "DEBTOR" means SAVE OUR SPRINGS (S.O.S.) ALLIANCE, INC., the Debtor-in-Possession in these Chapter 11 proceedings. The Debtor is also often referred to in this document as "SOS Alliance" or "the Alliance".

8.      "EFFECTIVE DATE" means that date on which the order confirming the Plan becomes final and nonappealable.

9.      "ESTATE" means the estate of the Debtor which came into existence at the commencement of these Chapter 11 proceedings, as the term "estate" is defined in Section 541 of the Bankruptcy Code.

10.     "EXECUTORY CONTRACTS" means any and all contracts, lease agreements, partnership agreements, or other contractual obligations of the Debtor to any other party which are binding upon the Debtor at the time this Chapter 11 proceeding was initiated, but shall not include any Secured Creditor or Unsecured Creditor that is otherwise provided for in this Plan.

11.     "PLAN" means the Plan of Reorganization contained in Section IV of this document, in its present form or as it may be amended or supplemented.

12.     "SECURED CLAIM" means a claim, debt or demand, as determined in accordance with Section 506 of the Bankruptcy Code, whether or not a personal liability of the Debtor, which is secured by a properly perfected mortgage, deed of trust, or security interest in any of the real or personal property owned by the Estate.

13.     "SECURED CREDITOR" means the holder of a Secured Claim.

14.     "TAX CLAIM" means a claim or demand (including both tax liability and any applicable penalty and interest) for tax liabilities of the Debtor entitled to priority under Section 507(a)(8) of the Bankruptcy Code, accruing prior to the Effective Date, including accrued, pre-confirmation tax liabilities, if any, that are hereafter established by any audit, amended return or other redetermination of the Debtor's tax liabilities (including a determination by the Bankruptcy Court, pursuant to Section 505 of the Bankruptcy Code).

15.     "TERM OF THE PLAN" means that period of time required to carry out all of the requirements of the Plan, including the payment by the Debtor of all sums of money required under the provisions of the Plan.

16.     "UNSECURED CLAIM" means any debt, demand or claim of whatever nature, other than Administrative Claims or Secured Claims, to the extent allowed in accordance with the provisions of the Bankruptcy Code and the Rules of Bankruptcy Procedure.

17.     "UNSECURED CREDITOR" means the holder of an Unsecured Claim.


II.     **INFORMATION CONCERNING THE DEBTOR AND ITS HISTORY**

   A.     **History of the Debtor and Type of Entity.**

SOS Alliance is a nonprofit corporation organized under the laws of the State of Texas. It originally organized under the name "Save Our Springs (S.O.S.) Legal Defense Fund, Inc." on November 30, 1992; on June 17, 1996, the organization filed Articles of Amendment with the Office of Secretary of State of Texas, formally changing its name to "Save Our Springs (S.O.S.) Alliance, Inc." SOS Alliance is also qualified as an organization exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code. Therefore, instead of an ordinary income tax return, SOS Alliance is required to file each year with the Internal Revenue Service an I.R.S. Form 990, which is an annual information return required of most tax-exempt organizations. As an employer, SOS Alliance is subject to federal and state payroll taxes, and it also pays annual property taxes on its tangible personal property.


   B.     **Nature of the Debtor's Activities.**

SOS Alliance is a community-based organization, the mission of which is to protect the Edwards Aquifer and the environment of the Texas Hill Country, with special emphasis on the Barton Springs Segment of the Aquifer. Attached to this document as Exhibit "A" is a two-page Summary of Organization and Activities prepared by William G. Bunch, the Executive Director of SOS Alliance. This Summary describes in some detail the nature of the organization's advocacy and education programs to promote conservation and protection of these vital natural resources. The Summary also describes the Alliance's board of directors, its management and its staff.

### C. Management of the Debtor.

SOS Alliance is managed by an Executive Director, William G. Bunch, who is a salaried employee of the organization. Mr. Bunch reports to a volunteer board of directors that meets monthly. Additional information about Mr. Bunch and the board of directors, as well as additional information about the Alliance's other staff members, is contained in the Summary of Organization and Activities (Exhibit "A" to this document).

The Managing Director of SOS Alliance is Pat Brodnax, who is a salaried employee of the organization. Among other management duties, Ms. Brodnax manages the Alliance's finances and oversees the Alliance's day-to-day operations. She reports to the Executive Director, Mr. Bunch, and to the board of directors.

The financial records of SOS Alliance are audited annually by an outside accounting firm, Montemayor Hill & Co., P.C., of Austin, Texas. Montemayor Hill & Co., P.C., also prepares the annual report to the United States Internal Revenue Service required of organizations exempt from federal income taxation.

### D. Events Leading to Bankruptcy.

The bankruptcy filing in this case became necessary to protect the Alliance's assets from seizure by a judgment creditor. In late 2004, in two separate lawsuits in which SOS Alliance was the original Plaintiff, out-of-town visiting judges awarded large attorneys' fee awards against the Alliance. The Alliance appealed both judgments to the Court of Appeals for the Third Supreme Judicial District of Texas. One of the cases, *Save Our Springs Alliance vs. City of Dripping Springs, et al.*, is still pending in the Third Court of Appeals and the appeal is ongoing. The other case, *Save Our Springs Alliance, Inc. vs. Lazy Nine Municipal Utility District, et al.*, was transferred to another Court of Appeals (for administrative reasons related to the relative caseloads of the courts), which affirmed the judgment of the trial court as to the attorney fee award. SOS Alliance sought further discretionary review in the Supreme Court of Texas, which in early 2007 refused to hear the case. The resulting judgment in favor of Lazy Nine Municipal Utility District, et al. (since assigned to Sweetwater Austin Properties, LLC) was for $264,000.00, plus accrued post-judgment interest and court costs. SOS Alliance and its attorneys attempted to negotiate a resolution of this judgment, short of filing a bankruptcy petition, but were unsuccessful. Because the judgment creditor then had a final judgment and would not give assurances to the Alliance's attorneys that it would withhold forced collection activity, the SOS Alliance management, board of directors and attorneys elected to file the Chapter 11 petition on April 10, 2007, to protect the assets of the Alliance from seizure. As is more fully discussed in Paragraph 4.4 of the Plan, below, SOS Alliance has discovered a further basis for challenging the validity of this judgment and may file a motion or suit in state court to set aside the judgment as void due to the trial judge's disqualifications under TEX. GOV'T CODE §74.053(d) and on possibly other grounds.

As is noted in the Summary of Organization and Activities (Exhibit "A" to this document), SOS Alliance has been involved in a number of lawsuits through the years in pursuing its mission. The two lawsuits described in the preceding paragraph represent the first time a money judgment has

been awarded against the Alliance in litigation. These events have had a detrimental impact upon the finances of the Alliance due to the uncertainty they have created as to its future. SOS Alliance has continued to raise funds through the generosity of its grassroots donors and has continued to have some success in attracting grant money for specific purposes from individuals and private foundations. But its large donors have been reluctant to provide funding to the Alliance with the two large judgments unresolved. To illustrate this point, SOS Alliance has attached as Exhibit "B" to this document its Internal Revenue Service Form 990 ("Return of Organization Exempt from Income Tax") for calendar years 2004 and 2005, except for Schedule B to such returns ("Schedule of Contributors"), which contains confidential donor information. SOS Alliance has attached as Exhibit "C" to this document its Profit and Loss Statement for calendar year 2006 (unaudited) and for the portion of calendar year 2007 from January 1 through September 15, the date of this Plan (unaudited). In 2004, the Alliance's tax return first reflected the adverse judgments as a change to "Net assets or fund balances" (See Form 990, Lines 18 though 21 and 73). The returns for both 2005 and 2006 (the 2006 return has not yet been filed and is still in preparation) include substantial donations made to SOS for nonrecurring special projects. Revenue in 2007 to date totals approximately $319,000.

In mid-2006, to deal with the challenges presented by diminished cash flow, SOS Alliance made significant reductions in its staff. The Alliance eliminated one senior staff attorney position and one paralegal position, and the Executive Director took a ten per cent (10%) cut in salary. In addition, the Alliance withheld payment to its employees of an across-the-board pay raise, even though that raise had been approved by the Alliance's Board of Directors and the raise amounts have been earned by the employees and remains owing to the employees at this time.

### E.     **Events Since the Bankruptcy Filing.**

Since the bankruptcy petition was filed on April 10, 2007, SOS Alliance has continued its normal operations, including its advocacy, educational and outreach programs. Most of the efforts to date in the Chapter 11 case have been devoted to: 1.) complying with the procedural requirements of the Bankruptcy Code and Rules of Bankruptcy Procedure and with the administrative requirements of the Office of the United States Trustee; and 2.) to formulating the Debtor's Plan of Reorganization. The only contested matter that has been heard during the course of the bankruptcy proceeding was the Debtor's Application to Employ Registered Professional Engineer, which was heard and approved by the Bankruptcy Court on June 18, 2007. The Court approved the Debtor's employment of Glenrose Engineering, Inc., and D. Lauren Ross, Registered Professional Engineer, for the purpose of evaluating an application by the Barton Springs/Edwards Aquifer Conservation District (BSEACD) to the U. S. Fish and Wildlife Service for an "Incidental Take Permit" relating to groundwater pumping of the Barton Springs segment of the Edwards and the effect of such pumping on the endangered Barton Springs salamander. The salamander lives only at Barton Springs and its survival as a species depends on protecting the quantity and quality of the spring flows.

On May 17, 2007, SOS Alliance filed in the Chapter 11 proceeding a Motion for Relief From Stay With Respect to Certain State Court Litigation, seeking permission of the Bankruptcy Court for all parties to proceed with the appeal in *Save Our Springs Alliance vs. City of Dripping Springs, et al.*, pending in the Court of Appeals for the Third Supreme Judicial District of Texas. This motion was not opposed and on June 18, 2007, the Bankruptcy Court signed an order granting the relief

requested. The parties to the appeal thereafter notified the Court of Appeals that the stay had been modified to permit the appeal to go forward so that that court can dispose of the appeal (briefing by all parties had been completed long before the bankruptcy case was filed). The Third Court of Appeals promptly lifted its own stay and the case is now again pending before the court.

### F. The Debtor's Financial Affairs Since the Bankruptcy Filing.

During the course of the bankruptcy proceeding, SOS Alliance has filed a monthly operating report on the form required by the Office of the United States Trustee. Attached to this document as Exhibit "D" are the monthly operating reports for April through July, 2007.

The Debtor's monthly operating reports do not reflect certain "restricted funds" that are under the control of SOS Alliance but are not property of the bankruptcy estate. These are funds that have been donated by private foundations for specific, restricted uses. SOS Alliance keeps these funds segregated from its normal operating funds and is required by the terms of the grants to report to the donor on its use of the funds. At the time the Chapter 11 petition was filed in April, 2007, $31,156.21 was on deposit in a Restricted Education Grant Account at Prosperity Bank. These funds represented the amount remaining on hand from a grant from the R. H. and Esther F. Goodrich Foundation. In late April, 2007, the Alliance received an additional $12,500.00 in restricted funds from the Moses Feldman Foundation. These funds have enabled SOS Alliance to continue its outreach and educational programs. As of the date this document is being filed with the Bankruptcy Court, the amount remaining in the Restricted Education Grant Account is $17,728.24. SOS Alliance has other grant applications pending and expects to have access to additional restricted grant funds during 2007.

The Debtor has received other funds that have been earmarked for special purposes, such as employee payroll. Because these funds were used for normal operations of the Alliance's office, they have been included in the monthly operating reports filed with the Bankruptcy Court.

III.   **INFORMATION CONCERNING THE VALUE OF THE DEBTOR'S PROPERTY**

Shortly after the bankruptcy case was filed in April, 2007, SOS Alliance filed the Schedules and Statement of Financial Affairs required by the Bankruptcy Code and the Rules of Bankruptcy Procedure. Among other things, these documents list all of the assets of the Debtor and place a value on each asset. Any interests in real property owned by the Debtor are described and valued in Schedule A. Any personal property owned by the Debtor, including both tangible and intangible personal property, are described and valued in Schedule B. Any executory contracts and unexpired leases to which the Debtor is a party are described in Schedule G. These three schedules have not been amended.

A.   **Real Property.**

Debtor's sole real property asset consists of a conservation easement that restricts the development and use of approximately 46 acres of land in Hays County, Texas. The land is located adjacent to the Jacobs Well spring, which flows from the Edwards Trinity Aquifer and provides the bulk of the flow of Cypress Creek as it flows through Wimberley. The purpose of the easement is to assure that the land "will be retained forever predominantly in its natural and scenic condition." The easement, among other provisions, specifically limits development to no more than six percent impervious cover. The conservation easement may be assigned, but only to another qualifying non-profit corporation that agrees to assume the responsibilities of the easement holder. Among other things, the restriction on transfer states that "[i]f Grantee ever ceases to exist or no longer qualifies under Sec. 170(h) or applicable state law, a court with jurisdiction shall transfer this Conservation Easement to another qualified organization having similar purposes that agrees to assume the responsibility." Because of this restriction on assignment, the fact that the easement gives no right of use or development of the subject property but rather imposes a duty to assure that only very limited development takes place consistent with stated conservation restrictions, as well as the fact that the easement is jointly held with another party, the Debtor's management believes that the easement has no liquidation value for its creditors.

B.   **Personal Property.**

The Debtor's Schedule B in the bankruptcy case, filed April 15, 2007, listed various items of personal property, valued in the aggregate at $19,654.26, excluding any potential value of assets scheduled as having an "unknown" value. The assets listed on Schedule B consist of the following (a parenthetical description of the basis for valuation follows each item in the list:

➢ Cash and depository accounts totaling $10,309.26. [This is the sum of the Debtor's petty cash plus the actual ledger balances of all bank and brokerage accounts as of the petition date (April 10, 2007), excluding amounts on deposit in the Restricted Education Grant Account, which is not property of the bankruptcy estate].

➢ Claim for attorney's fees in Dripping Springs case, valued as "unknown". [This possible asset is valued as "unknown" because currently the SOS Alliance is appealing an adverse money judgment against it and the amount of any fee claim it might have against the adverse party has not been determined by any court. This

8

asset would have value only if SOS Alliance is successful in its appeal of the adverse judgment and is successful in its original claims against the adverse parties in the trial court. The net value of this asset, if any, is contributed to the Creditor Settlement Fund established pursuant to Article VII of the Plan].

➤ The name "Save Our Springs Alliance" and variations thereof, the Save Our Springs logo, website and domain name, valued as "unknown". [Although these items are important to the Debtor's continued existence and operations, the Debtor's management does not believe they have any market value, particularly if the Debtor is liquidated and ceases to operate.]

➤ Donor lists, mailing lists and database, valued as "unknown". [Although these lists and the database are important to the Debtor's continued existence and future fund raising efforts, the Debtor's management does not believe they have any market value; in fact, Debtor's management believes the lists would become worthless if placed in the hands of a third party or publicly disseminated.]

➤ Miscellaneous office furniture, fixtures, computer equipment, library materials and promotional goods (a five-page "Fixed Asset List" was attached to Schedule B to document these items and is attached as Exhibit "E" to this document), valued at $9,345.00 [This value was based upon an inventory that is kept by SOS Alliance and updated each year in connection with the annual financial audits performed by Montemayor Hill & Co., P.C. The values stated for specific items in the Fixed Asset List are not based upon a formal appraisal but are based upon depreciation schedules used by the Debtor in connection with its required I.R.S. filings and the annual audit. Debtor's management believes the values stated are, if anything, higher than the current fair market value of the items listed, as all items are well-used office furniture, equipment and computers].

    C. **Executory Contracts and Unexpired Leases.**

At the time the bankruptcy case was filed, and at the present time, the SOS Alliance was (and is) a party to only one unexpired lease, a personal property lease on a photocopier. The other party to this lease is IKON Office Solutions (monthly payments are made to IKON Financial Services). In its Plan (Section IV of this document), the Debtor assumes this lease with IKON. The Debtor's lease of the office premises at 221 East 9th Street, Suite 300, in Austin, Texas, expired February 28, 2007, and the Debtor has been paying rent on a month-to-month basis ever since. The lessor of that property is Dr. John B. Pearson, III, but because the lease has expired, no assumption or rejection of the lease is required. SOS Alliance is not a party to any other executory contracts or unexpired leases.

**D.     Liquidation Analysis.**

Based upon the values stated in the Debtor's Schedules and analyzed in Paragraph D above, the total liquidation value of all of the Debtor's assets, excluding any net value that might eventually be realized from the attorneys' fee claim in the Dripping Springs case, is $19,654.26. All of these assets except for the cash and depository accounts are encumbered by a security interest (lien) held by Kirk Mitchell, a member of the Debtor's Board of Directors and an insider in this case. The total amount of the claim secured by this particular claim of Mr. Mitchell is $175,000.00. At the time the bankruptcy case was filed, this claim was held by American Bank of Commerce, which had extended a line of credit to SOS Alliance, secured by substantially all of the Alliance's assets and personally guaranteed by Mr. Mitchell. Mr. Mitchell also held a security interest in the Alliance's assets, to secure the Alliance's obligation to pay the line of credit note. After the bankruptcy case was filed, American Bank of Commerce called upon Mr. Mitchell to honor his guaranty. Mr. Mitchell then purchased the bank's note, security agreement and related documents and became the owner and holder of the secured claim against the Debtor's assets.

Because the amount of Kirk Mitchell's claim secured by the Debtor's assets greatly exceeds the value of those assets, the Debtor's management believes the unsecured creditors would get nothing if the estate of SOS Alliance were liquidated under Chapter 7 of the Bankruptcy Code.

In addition to Mr. Mitchell's secured claim, there are several claims entitled to priority in payment over the claims of general unsecured creditors. These include the Tax Claim of the United States Internal Revenue Service ($1,776.04) and priority wage claims of the employees of SOS Alliance totaling $6,235.00. The priority wage claims are described in more detail in the Alliance's Schedule E, filed in the bankruptcy case on April 15, 2007. The Tax Claim of the Internal Revenue Service is evidenced by a proof of claim filed August 13, 2007. This Tax Claim is for payroll taxes for the fourth quarter of 2005. The Debtor's payroll tax service deposited these taxes with the Internal Revenue Service during the first quarter of 2006 but shortly before the filing of the bankruptcy case, the Internal Revenue Service erroneously issued a refund check to the Debtor. The Plan provides that the Tax Claim of the Internal Revenue Service and the priority wage claims will not be paid out of the Creditor Settlement Fund to be created pursuant to the Plan (see paragraph below about the Creditor Settlement Fund); these claims will be paid out of the Debtor's other resources. In the case of the Tax Claim of the Internal Revenue Service, the claim will be paid in full on the Effective Date; in the case of the employee wage claims, the claims will be paid on or before one year from the Effective Date. In a liquidation, these priority creditors would receive payment in full out of any available assets before any payment to general unsecured creditors.

Attached as Exhibit "F" is a summary of the unsecured claims in this case. Opposite the name of each claimant is a statement of the amount scheduled for that creditor, the amount filed by that creditor (if different from the amount scheduled by SOS Alliance) and, if the claim is disputed by the Debtor, the basis of such dispute.

Article VII of the Plan (Section IV of this document, below) provides for the creation of a Creditor Settlement Fund, which will be funded by contributions totaling $60,000.00 from the Alliance's donors, such contributions to be earmarked for that Fund. As of the date this document is being filed with the Bankruptcy Court, SOS Alliance has firm verbal commitments from donors for a

portion of this $60,000.00 in contributions. The Alliance expects to have firm commitments for the entire $60,000.00 prior to the date of the hearing on confirmation of the Plan. In addition, the Plan provides that creditors holding allowed, unsecured claims will receive a supplemental distribution if there is a future recovery of fees in the Dripping Springs litigation.

The management and counsel of SOS Alliance believes that the amounts to be paid to unsecured creditors out of the Creditor Settlement Fund will greatly exceed any conceivable distribution to those creditors in a liquidation of the Alliance's assets. For this reason, the Alliance urges you to vote for its Plan, which is set forth below.

Attached as Exhibits "G" and "H" are balance sheets for SOS Alliance as of April 10, 2007, the date these bankruptcy proceedings were commenced, and September 15, 2007, the date the Plan is being signed by the Alliance's authorized representative. As is indicated in the explanatory note to the cover sheet for each of these exhibits, these balance sheets have not yet been audited and the asset values contained therein have not been adjusted downward to reflect accumulated depreciation for 2006 and year-to-date 2007. The information in these balance sheets support the foregoing liquidation analysis of the Debtor's available assets.

## IV.    PLAN OF REORGANIZATION

### ARTICLE I
### CLASSIFICATION OF CLAIMS AND INTERESTS

The claims against the Debtor are divided into the following classes:

CLASS 1:     Secured Claim of Travis County, Texas.

CLASS 2:     Secured Claim of Kirk Mitchell.

CLASS 3:     Priority wage Claims of the Debtor's employees.

CLASS 4:     Unsecured Claim of judgment creditor Sweetwater Austin Properties, LLC

CLASS 5:     Unsecured Claims of judgment creditors Cypress-Hays, L.P., and Mak Foster Ranch, L.P.

CLASS 6:     General Unsecured Claims.

### ARTICLE II
### CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

All classes of claims are impaired under the Plan, within the meaning of Section 1124 of the Bankruptcy Code, except Class 1. Class 1 is unimpaired and will be paid in full when the underlying tax debt on which that claim is based becomes due and payable.

### ARTICLE III
### TREATMENT OF ADMINISTRATIVE CLAIMS
### AND TAX CLAIMS

3.1     ADMINISTRATIVE CLAIMS. The holders of all Administrative Claims shall be paid in full, immediately when their respective Claims become due and payable, under the terms of their agreement with the Debtor. In the case of Bankruptcy Court-approved professional persons who have rendered services on behalf of the Estate prior to the Confirmation of the Plan, any Administrative Claim arising in favor of such a professional person shall be paid in full, immediately upon the entry of an order by the Bankruptcy Court, allowing such fees and ordering them paid, or thereafter at such time as may be agreed upon by the Debtor and the professional person who is entitled to payment. All fees for professional services that may be rendered on behalf of the Estate following Confirmation of the Plan shall be paid directly by the Debtor to the professional person rendering such services, without the necessity of application to the Bankruptcy Court for payment of same. At this time, the Debtor estimates that such professional fees will total approximately $10,000.00, over and above any retainers that have already been paid to the professionals in question.

The payment of any such professional fees will be made from the normal operating funds of the Debtor and will not be paid from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below.

3.2     TAX CLAIMS.  All Tax Claims, if any, shall be paid in full on the Effective Date.  As of the date of filing this Plan, a single Tax Claim in the amount of $1,776.04 has been filed against the Estate in this case, by the United States of America (Internal Revenue Service) ["I.R.S."].  This Tax Claim is the result of an erroneous refund made by the I.R.S. to the Debtor, shortly before the bankruptcy case was filed, of payroll taxes deposited by the Debtor's payroll service for the fourth quarter of 2005.  The allowed amount of this Tax Claim, if any, will be paid in full on the Effective Date from available funds in the Estate, and not from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below.

ARTICLE IV
TREATMENT OF CLAIMS AND INTERESTS
UNDER THE PLAN

4.1     CLASS 1 CLAIM.  This class is unimpaired.

The Class 1 Claim consists of a claim by Travis County, Texas, in the amount of $203.81, for 2007 *ad valorem* property taxes on business personal property.  This claim was not listed by the Debtor in its bankruptcy schedules but the creditor filed a proof of claim in the amount stated on August 9, 2007 (Claim No. 2).  The Class 1 Claim is secured by a statutory tax lien against the Debtor's tangible personal property (office furniture, fixtures and equipment) currently located at 221 East 9th Street, Suite 300, Austin, Texas.

The holder of the Class 1 Claim will retain the lien securing its claim until such claim has been paid in full.  The Class 1 Claim will be paid in full on before January 31, 2008, which is the date the underlying tax debt becomes due and payable under applicable nonbankruptcy law.  The Class 1 Claim will be paid from the normal operating funds of the Debtor and will not be paid from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below.

4.2     CLASS 2 CLAIMS.  This class is impaired.

The Class 2 Claim is the Secured Claim of Kirk Mitchell.  Mr. Mitchell is a member of the Debtor's board of directors; therefore, he is an insider of the Debtor, as that term is defined in Section 101(31) of the Bankruptcy Code.  As is indicated by the Debtor's bankruptcy schedules, at the time the Bankruptcy Case was filed, this Secured Claim was held by American Bank of Commerce ("ABC") and Mr. Mitchell was a guarantor of the debt.  The debt to ABC was originally set up as a $200,000 line of credit that had a balance of $175,000.00 (the amount listed in the Debtor's bankruptcy schedules) at the time the bankruptcy petition was filed.  In order to secure the Debtor's obligations under the line of credit to ABC and Mr. Mitchell's rights of indemnification or reimbursement if he were called upon to honor the guaranty, both ABC and Mr. Mitchell were granted security interests in all of the Debtor's tangible and intangible personal property other than cash and depository accounts; the assets subject to Mr. Mitchell's security interest are valued in the

13

Debtor's bankruptcy schedules at $9,345.00. After the filing of the bankruptcy case, ABC made demand upon Mr. Mitchell that he honor his guaranty, and he has done so. ABC has assigned its note and security agreement to Mr. Mitchell, who now holds the claim in its entirety.

The allowed amount of the Class 2 Claim will be fixed at $9,345.00, which is equal to the value of the collateral securing such claim; the remainder of this claim will be treated as a Class 6 Claim (General Unsecured Claim). The holder of the Class 2 Claim will retain the liens securing the claim until such claim has been paid in full. The Class 2 Claim will bear interest at the rate of eight per cent (8.0%) per annum on the unpaid principal balance thereof, beginning June 1, 2008, and will be paid in monthly installments of $228.14 each, including both principal and interest, commencing on July 1, 2008, and continuing on the first day of each consecutive calendar month thereafter until the Class 2 Claim has been paid in full. The monthly payment amount stated is based upon a forty-eight (48)-month amortization. These monthly payments on the secured portion of the Class 2 Claim will be paid from the normal operating funds of the Debtor and will not be paid from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below.

    4.3    CLASS 3 CLAIMS. This class is impaired.

The Class 3 Claims consist of claims for unpaid wages to the Debtor's employees. These claims total $6,235.00 (as per the bankruptcy schedules filed by the Debtor) and are entitled to priority in payment under Section 507(a)(4) of the Bankruptcy Code. The Class 3 Claims will be paid in full on or before the expiration of one year from the Effective Date. The Class 3 Claims will be paid from the normal operating funds of the Debtor and will not be paid from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below.

    4.4    CLASS 4 CLAIM. This class is impaired.

The Class 4 Claim is the Unsecured Claim of judgment creditor Sweetwater Austin Properties, LLC ("Sweetwater"), which holds a final judgment against the Debtor. This claim was listed by the Debtor in its schedules as belonging to the Lazy Nine Municipal Utility District in the amount of $264,000.00. After the filing of the bankruptcy case, the debt upon which the Class 4 Claim is based was assigned by the Lazy Nine M.U.D. to Sweetwater. Sweetwater has filed a proof of claim in the amount of $328,353.70 (Claim No. 6, filed August 13, 2007) in which Sweetwater asserts that its claim is secured by a judgment lien. Both the amount of Sweetwater's proof of claim and its assertion that its claim is "secured" are disputed by the Debtor. The claim amount is excessive because the proof of claim includes some $30,000 in attorneys' fees that were part of the original judgment but would be credited in the event the "petition for review by the Supreme Court of Texas…is denied" which is, in fact, what happened. Sweetwater's assertion that its claim is secured is disputed by the Debtor because neither Sweetwater nor its assignor, Lazy Nine M.U.D., took the steps, prior to the filing of the bankruptcy petition, to perfect a judgment lien under applicable nonbankruptcy (i.e., Texas) law.

In addition, SOS Alliance may challenge in state court the adverse judgment of attorney's fees rendered by visiting Judge Bill Bender in the 2004 trial of *Save Our Springs Alliance, Inc. v. Lazy Nine Municipal District*. SOS has discovered that this judge was subject to mandatory disqualification and that his judgment is void as a matter of law, under TEX. GOV'T CODE §74.053(d).

Rosell v. Central West Motor Stages, Inc., 89 S.W.3d 643, 650-51 (Tex. App.—Dallas, 2002, pet. denied); see In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998). If a judge is subject to disqualification under §74.053(d), he is absolutely without jurisdiction in the case, and any judgment rendered by him is void, without effect, and subject to attack at any time. Judge Bender may have been disqualified to hear the cases for other reasons as well. SOS Alliance may file a motion or suit in state court to set aside the void judgment, which is wholly proper under Texas law, even though this matter was not raised during any appeal.

The allowed amount of the Class 4 Claim will receive a pro rata distribution, along with the allowed amounts of Claims in Classes 5 and 6, from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below, sixty days after the Effective Date or the date upon which the allowed amount of the Class 4 Claim is finally determined, whichever is later.

  4.5  CLASS 5 CLAIMS. This class is impaired.

Class 5 consists of the Unsecured Claims of judgment creditors Cypress-Hays, L.P. ("Cypress-Hays"), and Mak Foster Ranch, L.P. ("Mak Foster"). Neither of the judgments is final and both are the subject of an appeal pending in the Court of Appeals for the Third Supreme Judicial District of Texas. These claims were listed by the Debtor in its schedules as being in the amount of $100,008.00 (disputed) for Cypress-Hays and $109,700.00 (disputed) for Mak Foster. Both creditors in Class 5 have filed proofs of claim: Cypress-Hays filed a proof of claim in the amount of $50,903.00 (Claim No. 3, filed August 10, 2007); and Mak Foster filed a proof of claim in the amount of $165,273.71 (Claim No. 4, filed August 10, 2007). The Cypress-Hays proof of claim is subject to objection only because the judgment in question is still subject to appeal; if the judgment is ultimately upheld on appeal, this amount will not be disputed by the Debtor. The Mak Foster proof of claim is subject to objection both because the judgment in question is still subject to appeal and because the amount stated in the proof of claim exceeds the amounts awarded by the judgment.

The allowed amounts of the Class 5 Claims, if any, will receive a pro rata distribution, along with the allowed amounts of Claims in Classes 4 and 6, from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below, sixty days after the Effective Date or the date upon which the allowed amounts of the Class 5 Claims are finally determined, whichever is later.

  4.6  CLASS 6 CLAIMS. This class is impaired.

Class 6 consists of all General Unsecured Claims. A list of such claims, as of the date this Plan is being filed, is attached to this document as Exhibit "F". The Debtor's management is not aware of any basis for objecting to any of the claims in Class 6 and the Debtor proposes to allow all such claims in the amounts stated in Exhibit "F".

The allowed amount of each of the Class 6 Claims will receive a pro rata distribution, along with the allowed amounts of Claims in Classes 4 and 5, from the Creditor Settlement Fund established pursuant to Paragraph 7.1 of this Plan, below, sixty days after the Effective Date or the date upon which the allowed amount of such Claim is finally determined, whichever is later.

ARTICLE V
EXECUTORY CONTRACTS

The Debtor hereby assumes the unexpired personal property lease on the photocopy machine with IKON Office Solutions. The Debtor does not have any other executory contracts or unexpired leases.

ARTICLE VI
FEES PAYABLE TO THE UNITED STATES TRUSTEE,
PURSUANT TO 28 U.S.C. §1930(a)(6)

On the Effective Date, the Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) and provide to the United States Trustee an appropriate affidavit indicating all cash disbursements for the relevant period and shall continue filing all reports and paying all fees until this case is closed, converted or dismissed.

ARTICLE VII
MEANS FOR EXECUTION OF THE PLAN

7.1     Creation and Funding of Creditor Settlement Fund. On the Effective Date, the Debtor will establish a new depository account at Prosperity Bank, Austin, Texas, for the purpose of funding payments to holders of allowed Claims in Classes 4, 5 and 6. This Creditor Settlement Fund will be funded by new contributions in the aggregate amount of Sixty Thousand and No/100 Dollars ($60,000.00) from donors to the Debtor, Save Our Springs Alliance, which the Alliance will collect and deposit into the Creditor Settlement Fund within sixty (60) days of the Effective Date. In addition to these contributions, the Debtor will deposit into the Creditor Settlement Fund any net recovery the Debtor may realize in the future from Cypress-Hays and/or Mak Foster in the "Dripping Springs Lawsuit" (*Save Our Springs Alliance vs. City of Dripping Springs, et al.*). As used in this Article VII, "net recovery" means the total amount received by the Debtor after the Effective Date from either the collection or settlement of its claims in the Dripping Springs Lawsuit, minus the actual costs incurred by the Debtor after the Effective Date in pursuing the Dripping Springs Lawsuit, including reasonable attorneys' fees, court costs and other reasonable expenses of litigation, and including both expenses incurred in the currently pending appeal, in any future appeal to the Supreme Court of Texas and in any remand of the Dripping Springs Lawsuit to the trial court.

7.2     Disbursements to Creditors From the Creditor Settlement Fund. On or before the sixtieth day following the Effective Date, the Debtor will disburse from the Creditor Settlement Fund, to each holder of an allowed Claim in Classes 4, 5 and 6, such holder's pro rata share of the Sixty Thousand and No/100 Dollars ($60,000.00) contributed by the Debtor's donors and deposited by the Debtor pursuant to Paragraph 7.1, above. The pro rata share of any disputed Claim will be held in the Creditor Settlement Fund pursuant to Paragraph 9.3, below, until such time as such Claim is allowed in whole or in part, and shall be disbursed in accordance with the requirements of that

paragraph.

## ARTICLE VIII
## ADDRESS FOR NOTICES

Any notice required or permitted to be served upon the Debtor in connection with this Plan shall be served upon the Debtor, Save Our Springs Alliance, at P.O. Box 684881, Austin, Texas 78768, and upon its attorney, B. Weldon Ponder, Jr., at Building 3, Suite 200, 4601 Spicewood Springs Road, Austin, Texas 78759-7841, by registered or certified mail, return receipt requested, first class postage prepaid. Notice shall be effective when it has been received by the Debtor and its attorney. The Debtor or its attorney may change their respective addresses for notice by mailing written notice of such changes to all creditors and other parties in interest in this proceeding, at the last known address for each such party, as reflected in the Bankruptcy Court's file, by first class mail, postage prepaid.

## ARTICLE IX
## DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

9.1     Deadline for objections. Any party in interest may file an objection to any Claim on or before sixty (60) days after the Confirmation of the Plan. All other objections not filed within such time shall be deemed waived.

9.2     Estimation for voting purposes. Claims to which any objection is filed prior to the hearing on Confirmation of the Plan shall be estimated by the Court for the purpose of establishing the amount which any particular creditor is entitled to vote on the Plan.

9.3     Suspension of payments on disputed claims. If any Claim has been objected to within the time required, the Debtor shall segregate and set aside, from the funds on hand for distribution to the claimant's class, funds sufficient to satisfy the payment otherwise due on the Claim according to the provisions of the Plan. Funds not so segregated shall be distributed in accordance with the Plan. In the event the objection is overruled or a dispute is resolved favorable to the party asserting the Claim, then the funds shall be paid to the creditor in accordance with applicable class provisions. In the event the disputed Claim is disallowed, the funds segregated in deference to the Claim shall be disbursed to other parties in interest, according to the applicable provisions of the Plan.

## ARTICLE X
## DEFAULT

No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Order Confirming the Plan. In the event that any party in interest determines that the Debtor is in default of any requirement of this Plan, such party or its attorney shall provide written notice of such claimed default to the Debtor, in accordance with the requirements of Article VIII, above, prior to filing a motion with the Bankruptcy Court to dismiss or convert these proceedings for the alleged noncompliance with the terms of the Plan, or to otherwise seek court enforcement of the terms of this Plan.

## ARTICLE XI
## MODIFICATION OF THE PLAN

11.1 Prior to Confirmation. The Debtor may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code. Upon the filing of any such modification with the Bankruptcy Court, the Plan, as modified, becomes the Plan.

11.2 After Confirmation. The Debtor may modify the Plan at any time after Confirmation, upon compliance with Section 1127 of the Bankruptcy Code. The Debtor or its attorney shall provide notice of any such proposed modification to all creditors and other parties in interest in these Chapter 11 proceedings. If, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interest of the creditors, the Court may modify the Plan without notice to creditors, or may modify the Plan upon notice only to those creditors that the Court deems to be materially and adversely affected.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. Specifically, but not by way of limitation, the Court shall retain jurisdiction for the following purposes:

1. To rule upon any objections to Claims and any requests for determination of tax liabilities (including not only the amounts thereof, but also the priority in payment thereof);

2. To hear and determine any request for valuation of property of the Estate;

3. To hear and determine any application for sale of property in the event the sale of such property is not specifically provided for in this Plan;

4. To hear and determine any adversary proceeding commenced or to be commenced by the Debtor, seeking to avoid a lien against property of the Estate or asserting any cause of action held by the Estate;

5. To hear and determine any application for compensation by professionals providing services in this case, and to allow any other administrative expenses incurred by the Debtor or the Estate;

6. To hear and determine any dispute regarding the amount of any "net recovery" the Debtor may receive in the future with respect to the Dripping Springs Lawsuit (Paragraph 7.1 of the Plan), including the determination of reasonable attorneys' fees, court costs and other reasonable expenses of litigation incurred by the Debtor in

connection with such Lawsuit.

7. To hear and determine any request for modification of the Plan.

8. To hear and determine any dispute regarding the implementation of the Plan, or to compel compliance with the specific requirements or the intent of this Plan.

EXECUTED this 15th day of September, 2007.

SAVE OUR SPRINGS (S.O.S.) ALLIANCE, INC.

By: __/s/ William G. Bunch_____
William G. Bunch
Its Executive Director

Drafted and Approved:

__/s/ Weldon Ponder_____
B. WELDON PONDER, JR.
Attorney at Law
State Bar of Texas No. 16110400
Building 3, Suite 200
4601 Spicewood Springs Road
Austin, Texas 78759-7841
(512) 342-8222 / FAX (512) 342-8444

ATTORNEY FOR THE DEBTOR IN POSSESSION,
SAVE OUR SPRINGS (S.O.S.) ALLIANCE, INC.