# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

IN RE:  SAVE OUR SPRINGS (S.O.S.)  §  CHAPTER 11
          ALLIANCE, INC.,  §
                  Debtor.  §  CASE NO. 07-10642-FM

## SWEETWATER AUSTIN PROPERTIES, L.L.C.'S OBJECTION TO THE DEBTOR'S FIRST AMENDED PLAN COMBINED WITH DISCLOSURES FOR A SMALL BUSINESS CASE PURSUANT TO 11 U.S.C. § 1125(f)

Comes now SWEETWATER AUSTIN PROPERTIES, L.L.C., a creditor herein ("Sweetwater"), and files this its objection to the *Debtor's First Amended Plan Combined with Disclosures for a Small Business Case Pursuant to 11 U.S.C. § 1125(f)* ("the Plan"), and would show the court as follows:

1.       Debtor filed the *Debtor's First Amended Plan Combined with Disclosures for a Small Business Case Pursuant to 11 U.S.C. § 1125(f)* on October 11, 2007.

2.       The Plan fails to meet the requirements of 11 U.S.C. § 1129 and should not therefore be confirmed.

3.       The Plan fails to satisfy Section 1129(a)(1) in that it does not comply with applicable provisions of the Code. The Debtor fails by its classification scheme to meet the requirements of 11 U.S.C. § 1122(a). The Plan fails to meet the requirements of 11 U.S.C. §§ 1129(a)(1) and 1122(a) because it contains impermissible classification of creditors that is designed solely to secure the vote of an impaired assenting class of claims. Class 4 (Sweetwater), Class 5 (Cypress-Hays) and Class 6 (General Unsecured Claims) receive identical treatment under the Plan. They are all to be paid from the $60,000 Creditor Fund on a pro rata basis. Considering Section 506 of the Code, they are all general unsecured creditors as indicated by Exhibit "F" to the Plan. However, without justification, what should be one class of creditors is split into three classes. The classification is not accidental. The Debtor is fully aware that

Sweetwater and Cypress-Hays will likely vote against the Plan in its current form. Including either Sweetwater or Cypress-Hays in Class 6 (as each should be) could be fatal to Debtor's reorganization attempt. This type of "artful" classification is exactly the type of gamesmanship that the Fifth Circuit found to be improper in In re Greystone III Joint Venture, 995 F.2d 1274 (5th Cir. 1991).

4.     The Plan was not filed in good faith. Section 1129(a) provides that a court may confirm a plan only if, among other things:

(1)     The plan complies with the applicable provisions of this title [Title 11].
(2)     The proponent of the plan complies with the applicable provisions of this title [Title11].
(3)     The plan has been proposed in good faith and not by any means forbidden by law.

*11 U.S.C. § 1129(a)(1)-(3)*

5.     The Debtor has offered no legitimate justification for the unique classification scheme proposed by the plan. Therefore, the Plan does not comply with applicable provisions of Title 11.

6.     Although "good faith" is not defined in the Bankruptcy Code, it is well-settled that a plan must be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." In re Sound Radio, Inc., 93 B.R. 849, 853 (Bankr. D. N.J. 1988); In re The Leslie Fay Companies, Inc., 207 B.R. 764 (Bankr. S.D.N.Y. 1997) (the good faith requirement mandates a showing that "the plan was proposed with 'honesty and good intentions…' Generally, a plan is proposed in good faith 'if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code'") (citations omitted).

7.     The determination of good faith must be based on the totality of the circumstances. In re Cajun Electric Power Coop., Inc., 150 F.3d 503, 519 (5th Cir. 1998); In re

Holley Garden Apartments, Ltd., 238 B.R. 488, 493 (Bankr. M.D. Fla. 1999). The issue of good faith looks to the purposes that would be achieved by the plan. In re Genesis Health Ventures, Inc., 266 B.R. 591, 609 (Bankr. D. Del. 2001).

8.     Courts have found that a plan is proposed in good faith where three (3) requirements are satisfied: (a) the plan fosters a result consistent with the Bankruptcy Code's objectives; (b) the plan has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected; and (c) there was fundamental fairness in dealing with the estate. In re Block Shim Development Co.-Irving, 939 F.2d 289, 292 (5th Cir. 1991); In re Madison Hotel Associates, 749 F.2d 410, 425 (7th Cir. 1984); In re Resorts International, Inc., 145 B.R. 412, 469 (Bankr. D. N.J. 1990); In re Koelbl, 751 F.2d 137, 139 (2nd Cir. 1984); In re Stolrow's Inc., 84 B.R. 167, 172 (9th Cir. BAP 1988).

9.     The Plan fails the "good faith" test in that:

    a.     The Plan, as proposed, does not foster a result consistent result with the goals of the Code. What is proposed here is a hybrid plan of reorganization. It is designed to pay the absolute minimum and arbitrary amount to its creditors yet continue its operations (with the benefit of a discharge). In other words, the funding of the Plan is based upon a liquidation[1] (funds available at a snapshot in time while ignoring potential income from future operations). The Debtor desires the benefit of Chapter 7 (i.e. payments to creditors based upon liquidation values), while remaining in business and devoting none of its future income to the creditors. SOS cannot have it both ways. The Code was designed to allow for one or the other.

    b.     The Plan should fail for lack of good faith also because there can be no legitimate and honest belief that the plan currently proposed is feasible and confirmable. How can SOS anticipate in good faith that a plan will be confirmed that, as of a few days ago, lacked the funding for the Creditor's Trust. As of Tuesday, October 30, 2007, Mr. Bunch, chief operating officer testified that there exists only one verbal $12,000 commitment for plan funding. The two largest donors, Mr. George Mitchell and his son, Kirk

---

[1]     No true liquidation analysis has been provided. Debtor simply relies on its statements in the schedules that the Name, Goodwill, Donor and customer lists have unknown value.

Mitchell (director and Treasurer of SOS) refuse to make any contribution of the fund.

c.    The Plan lacks fundamental fair dealing with the Estate. On the eve of bankruptcy, SOS identified certain funds that it refers to as "Restricted Funds". The "Restricted Funds" had long been maintained and accounted for in the Debtor's operating account. The Restricted Funds were moved post-petition to a separate account .The Restricted Funds are those donated by the Goodrich Foundation and the Feldman Foundation. Letters and related documents were produced by the Debtor for purposes of supporting the SOS assertion that these funds are not property of the Bankruptcy Estate. However, no legitimate or legal basis has been provided to support exclusion of these funds from the estate. In fact, the funds have been commingled in intercompany transfers since the new account was created. The Goodrich funds are used for a wide variety of activities such that it is impossible to distinguish them for use of funds for daily operations. No trust was created for protection of restricted funds from use of regular operating funds (although it appears that SOS consulted with legal counsel for that very purpose).

d.    The Plan unfairly classifies similarly situated creditors in order to manipulate the voting process. It discriminates against Sweetwater. The Plan deprives Sweetwater the full benefit of its vote by improperly and separately classifying classes 4, 5, and 6 (all unsecured creditors, of which Sweetwater is one). The only explanation provided by Mr. Bunch during his deposition for separate classification is that the trade creditors like SOS and the judgment creditors do not.

e.    The Plan includes Class 3 as a "wage claims" class that consists of proposed, unearned wages to insiders. Testimony taken of Mr. Bunch and Ms. Brodnax make it abundantly clear that these are not valid claims as defined in 11 U.S.C. § 101(5). There claimants have no right to payment. This class is illusory and should not be taken into account for purposes of voting or any other purpose. To the extent that votes are allowed, then the votes should not be included for purposes of determining that an impaired class has accepted the plan because the acceptances are by disqualified insiders.

10.    The Plan fails to provide unsecured creditors as much as would be realized in a Chapter 7 liquidation. As with all of the requirements of Section 1129(a), the proponent bears the burden of establishing that the Plan satisfies the dictate of subsection 11 U.S.C. § 1129(a)(7), providing that a plan cannot be confirmed unless:

(7)    With respect to each impaired class of claims or interests—

> (A)     each holder of a claim or interest of such class--
> (i)     has accepted the plan; or
> (ii)     will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title [11 USCS §§ 701 et seq.] on such date;…

11 U.S.C. § 1129(a)(7)(A). *See also* <u>In re Labrum & Doak, LLP</u>, 227 B.R. 372, 381 (Bankr. E.D. Pa. 1998).

11.     It is well-settled that "[i]n order to make the comparison required by § 1129(a)(7), the plan proponent must provide the court with adequate evidence of the liquidation value of the debtor's assets." <u>In re Union Meeting Partners</u>, 165 B.R. 553, 574 (Bankr. E.D. Pa. 1994), <u>aff'd</u>, 52 F.3d 317 (3rd Cir. 1995); <u>In re Rusty Jones, Inc.</u>, 110 B.R. 362, 373 (Bankr. N.D. Ill. 1990)(a plan fails section 1129(a)(7) requirement where the proponent fails to provide the Court with evidence sufficient to allow it to determine the likely distributions to creditors in a hypothetical Chapter 7 liquidation.); <u>In re Future Energy Corp.</u>, 83 B.R. 470, 489 (Bankr. S.D. Ohio 1988) (plan proponent has affirmative burden to establish the satisfaction of each section 1129(a) criteria, including subsection (a)(7)).  In this instance, SOS has provided no evidence or information.  Its position appears to be that only SOS would be willing to purchase from a Chapter 7 Trustee the name, donor names, customer accounts and goodwill.  That is not enough.  What is SOS willing to pay for the name, lists, etc?  Are there other groups, individuals or donors such as Greater Edwards Aquifer Alliance that would find value in the name?  It appears that SOS has done nothing to determine the value of its name in liquidation . . . yet it is the Debtor's duty to provide and disclose that information.  Without a complete understanding of the value of the SOS name, donor lists and related information, SOS cannot prove that the creditors would receive less in a liquidation.

12.     With regard to 11 U.S.C. § 1129(8), Sweetwater asserts that Classes 2 and 3 and portions of Class 6 are disqualified as insiders for purposes of their votes being used as a qualifying impaired class of claims that will allow the Debtor to attempt confirmation under 11 U.S.C. § 1129(b)  Further Class 3 should be disqualified because it is not a true class and no claims are held against this estate.

13.     Sweetwater objects to this Plan because it is not feasible.  11 U.S.C. § 1129(a)(11) requires that confirmation of the plan is not likely to be followed by liquidation.  SOS proposes to raise $60,000 for funding its creditors trust.  As of October 12, 2007, SOS had a verbal commitment for $12,000.  The largest donors of SOS made it very clear that they will not contribute to any portion of the fund.  Moreover, the son of the largest donor testified that he and his father would continue to make donations to the Greater Edwards Aquifer Alliance and other environmental organizations, but that they would not assist SOS with monies for efforts to satisfy the SOS judgment creditors.  Additionally, as of October 30, 2007, the representatives of the Debtor testified that they have received no "fyi" invoices from Mr. Ponder and that they have no idea the amount of his administrative claim.  Without at least an estimate of his claim and evidence that demonstrates that the Debtor has the ability to pay the administrative claim, the Plan must fail because of lack of proof on feasibility.

14.     The Plan cannot be confirmed under 11 U.S.C. § 1129(b) for reasons stated above.  In addition, the Plan is not fair and equitable with respect to Sweetwater.  Further, the Plan fails to provide Sweetwater with property of a value as of the effective date of the plan that is equal to the allowed amount of Sweetwater's claim while allowing insider claims that should be subject to equitable subordination to receive equal distributions.

15.     11 U.S.C. § 1141 allows a Chapter 11 Debtor a discharge under certain circumstances.  Those circumstances are not present here:  First, the Debtor is liquidating all of its assets and it would not be entitled to a discharge under Chapter 7 of the Code.  While some bare bones operations may continue, the Debtor has intentionally limited its operations in an effort to avoid its liabilities to its judgment creditors.  The bulk of its operations have been transferred to other non-profit organizations, including but not limited to Greater Edwards Aquifer Alliance, Inc., of which SOS is a member.  The Debtor should not be allowed to operate on such minimal levels with an expressed desire to avoid payment of its legitimate creditors, offer a liquidation price for funding its plan and walk away with the business intact.  Such a result is patently against public policy and the scheme set forth in the Code.  It would reward debtors and their board of directors for breach of their most fundamental roles:  their duties to their creditors.  This Debtor appears to have been insolvent for some time.  Yet, the individual board members seem to be totally oblivious of their individual fiduciary obligations.  The logic of SOS and some of its board is fundamentally flawed because it completely ignores the consequences of their actions.

16.     For all of the reasons set forth above, the Plan of Reorganization is not confirmable.

WHEREFORE, SWEETWATER AUSTIN PROPERTIES, L.L.C. prays that confirmation of the *Debtor's First Amended Plan Combined with Disclosures for a Small Business Case Pursuant to 11 U.S.C. § 1125(f)* be denied and for such other relief as is just.

Respectfully submitted,

MARTINEC, WINN, VICKERS & MCELROY, P.C.
600 Congress Avenue, Suite 500
Austin, TX 78701
(512) 476-0750/FAX (512) 476-0753
mcelroy@mwvmlaw.com


By:    /s/ Rebecca S. McElroy
       Rebecca S. McElroy
       State Bar No. 13587500
ATTORNEYS FOR SWEETWATER AUSTIN
PROPERTIES, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Sweetwater Austin Properties, L.L.C.'s Objection to the Debtor's First Amended Plan Combined with Disclosures for a Small Business Case Pursuant to 11 U.S.C. § 1125(f)* was sent in accordance with Local Rule 9013(g) by first class mail, postage prepaid, on the 2nd day of November, 2007, to the creditors and parties in interest listed on the attached Mailing Matrix and to the following:

Save Our Springs (S.O.S.) Alliance, Inc.
P.O. Box 684881
Austin, TX 78768
(Mailed)

B. Weldon Ponder, Jr.
Building 3, Suite 200
4601 Spicewood Springs Rd.
Austin, TX 78759-7841
(Faxed and ECF e-mail)
Attorney for Debtor-in-Possession

William B. Gammon
2525 Wallingwood Drive, Suite 600
Austin, TX 78746
(Faxed and ECF e-mail)

William H. Daniel
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, TX, 78701
Attorneys for Mak Foster Ranch, L.P.
(Faxed and ECF e-mail)

U. S. Trustee
903 San Jacinto, Ste. 230
Austin, TX 78701
(Faxed and e-Mailed)


       /s/ Rebecca S. McElroy
       Rebecca S. McElroy