# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| *In re*: | § | |
| | § | |
| Save Our Springs (S.O.S.) Alliance, Inc., | § | Case No. 07-10642-FM |
| | § | (Chapter 11) |
| *Debtor* | § | |

## BRIEF OF THE DEBTOR IN POSSESSION, SAVE OUR SPRINGS ALLIANCE, INC., ON ISSUES OF CLAIMS CLASSIFICATION AND BAD FAITH

TO THE HONORABLE CRAIG GARGOTTA, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES SAVE OUR SPRINGS ALLIANCE, INC., the Debtor in Possession in the above-entitled and numbered Chapter 11 bankruptcy proceeding ("SOS Alliance"), prior to the presentation of evidence on November 5, 2007, and submits this Brief on various issues of law to be presented by the parties at trial. In that regard, SOS Alliance would respectfully show the Court the following:

### Procedural History and Status of the Case

SOS Alliance, a nonprofit corporation formed under the laws of the State of Texas, filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on April 10, 2007. Since that date, SOS Alliance has continued to operate its business and manage its assets as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On September 19, 2007, SOS Alliance filed its Plan Combined with Disclosures for a Small Business Case Pursuant to 11 U.S.C. §1125(f). On October 1, 2007, the Court conducted a hearing on the adequacy of the information contained in that plan, for the purposes of 11 U.S.C. §1125, and required that certain additional information be included in the disclosures. On October 11, 2007, SOS Alliance filed its First Amended Plan Combined with Disclosures, and the Court signed an

order approving the disclosures and authorizing SOS Alliance and its counsel to mail out the First Amended Plan and related documents to the creditors for voting. The hearing on confirmation of SOS Alliance's First Amended Plan is scheduled for November 5, 2007.

### Questions of Law Presented

SOS Alliance anticipates that a number of issues will be raised at the confirmation hearing, which is contested. The principal creditor objecting to the confirmation of the First Amended Plan is Sweetwater Austin, Properties, LLC ("Sweetwater"), which is the assignee of a judgment creditor. Sweetwater is designated the Class 4 Claim in the First Amended Plan. Sweetwater has submitted a ballot to reject the First Amended Plan and has filed numerous objections to confirmation.

This Brief will not attempt to address all of the legal issues that will come up at trial, but will deal with two issues that have been clearly presented to date:

1) Whether the classification of creditors in the First Amended Plan is proper under Section 1122 of the Bankruptcy Code; and

2) What are the standards for designating an entity (in this case, Sweetwater) as one whose acceptance or rejection of a plan was not in good faith?

### Argument and Authorities

*The classification of creditors in SOS Alliance's First Amended Plan is appropriate under 11 U.S.C. §1122.*

Sweetwater has objected to the First Amended Plan because, *inter alia*, it allegedly "contains impermissible classification of creditors that is designed solely to secure the vote of an impaired assenting class of claims." Sweetwater complains that it should be in the same class with the two creditors now in Class 5 (Cypress-Hays, LP, and Mak Foster Ranch, LP) and with

all of the creditors in Class 6, which are miscellaneous unsecured claims by various persons or firms that have provided goods or services to SOS Alliance on account.

Section 1123 of the Bankruptcy Code [11 U.S.C. §1123(a)(1)] requires that a plan designate, subject to the provisions of Section 1122, classes of claims. Code Section 1122 provides that "a plan may place a claim or an interest in a class only if such claim or interest is substantially similar to the other claims or interests of such class."

There is no evidence in this case to support the proposition that SOS Alliance has "gerrymandered" the classes in order to obtain an impaired assenting class. There are valid business and legal reasons for placing the various creditors into the classes in which they are listed in the First Amended Plan.

As is more fully discussed in the First Amended Plan, Sweetwater's claim is based on a judgment rendered by a Texas court, originally in favor of another party, Lazy Nine Municipal Utility District. Sweetwater is the assignee of the Lazy Nine M.U.D. Sweetwater has asserted that its claim in this case is secured by a judgment lien. [See Amended Claim No. 6 on the Court's Claims Docket, filed by Sweetwater on October 31, 2007]. Save Our Springs Alliance contends that the Lazy Nine judgment is void due to the trial judge's disqualifications under TEX. GOV'T CODE §74.053(d) and on possibly other grounds. Save Our Springs Alliance has asked permission of this Court to employ special counsel to pursue this voidness argument in the state courts of Texas; the Application to Employ Special Counsel is one of the matters set with confirmation on November 5, 2007. The First Amended Plan provides for this matter to be fully resolved, and for Sweetwater's claim (if any) to be fully liquidated, before any payment is made on the claim. When all legal disputes regarding the Lazy Nine/Sweetwater claim have been resolved, if Sweetwater has an allowed claim in some amount, it will be paid on a pro rata basis

3

with other unsecured creditors from the Creditor Settlement Fund provided for in Article VII of the Plan.

The Class 5 Claims (Cypress-Hays, LP, and Mak Foster Ranch, LP) are litigation claims arising from judgments entered against SOS Alliance in late 2004 in a single lawsuit. These judgments are currently on appeal in the Texas state courts. The appeal of the judgments in the Cypress-Hays/Mak Foster litigation has been pending for nearly three years. Subject to the Bankruptcy Court's approval, SOS Alliance has reached a settlement with one of these creditors and it is attempting to finalize a settlement with the other. In the meantime, their claims remain unliquidated and disputed. When all legal disputes regarding the Cypress Hays/Mak Foster claims have been resolved, either through litigation or settlement, if either of these creditors has an allowed claim in some amount, it will be paid on a pro rata basis with other unsecured creditors, from the Creditor Settlement Fund provided for in Article VII of the Plan.

The Class 6 Claims are all fully-liquidated, undisputed, relatively small unliquidated claims. Only one claim in the class (Glenrose Engineering at $8,119.67) exceeds $3,000 in amount. The First Amended Plan provides for the holder of each allowed claim in Class 6 to receive a pro rata distribution, along with the allowed amounts of Claims in Classes 4 and 5, if any, from the Creditor Settlement Fund provided for in Article VII of the Plan, sixty days after the Effective Date of the Plan. Because none of the claims in Class 6 are disputed, it is anticipated that these claims will received their pro rata distribution on or before the sixtieth day following the Effective Date.

***As Litigation Claims, the Class 4 and Class 5 Creditors are Appropriately Classified Separately from the Class 6 Creditors***

There are many reasons, both legal and practical, why the creditors in Classes 4 and 5 are dissimilar from those in Class 6. The claims remain unliquidated and disputed; in the case of Sweetwater, it is likely its claim will remain thus for quite some time. In the cases of Cypress-Hays and Mak Foster, the claims remain unliquidated and disputed at this time, although efforts are being made to achieve settlements with both. Until such settlements are approved, however, there remains the possibility that SOS Alliance would prevail on its appeal and be able to assert its original claims against Cypress Hays and Mak Foster. The claims are thus subject to reversal and the offsetting claims of SOS Alliance on a remand to the trial court.

Even a creditor with a final, non-appealable judgment is dissimilar to the creditors in Class 6. Under the law of Texas and all other states, a creditor with a judgment has enforcement powers that are unavailable to a creditor with a simple, liquidated trade claim. These include the remedies of execution, garnishment, and the creation of a judgment lien, which Sweetwater claims to have perfected in this case. None of the creditors in Class 6 have these remedies available to them.

One recent case from the Bankruptcy Court for the Southern District of New York upheld the separate classification of trade claims, which the court found were "generally liquidated", from the other unsecured claims, which were "primarily unliquidated litigation and rejection damage claims." In re Adelphia Communications Corp., 368 B.R. 140 at 247 (Bankr. S.D. NY 2007), appeals dismissed at 367 B.R. 84 and 371 B.R. 660.

***Sweetwater's Non-Creditor Interest Justifies the Plan's Separation of Sweetwater's Claim From Other Claims and Such Classification Is, In Fact, Necessary to Prevent Inequitable Results to Other Creditors***

5

As demonstrated at the disclosure hearing, Sweetwater's overriding interest in SOS Alliances's Plan is entirely unrelated to its status as a creditor in bankruptcy. Sweetwater opposes the Plan in its self-described role as an "antagonist" of SOS Alliance and for the purpose of minimizing litigation exposure. Fifth Circuit and other applicable bankruptcy law establishes that separate classification is justified where the debtor presents evidence that is independent of a gerrymandering motive, such as the non-creditor interest held by Sweetwater in this case. Sweetwater's Claim would unfairly predominate if it were included in the same class as the General Unsecured Creditors (Class 6), causing the creditors in that class to recover nothing solely because Sweetwater seeks to block the plan for bad faith reasons that have no relation to its status as a creditor.

Under Bankruptcy Code Section 1122, a plan may contain several different classes of claims as long as the claims in each class are substantially similar. The language of Section 1122 does not prohibit putting somewhat similar claims in separate classes, if there are valid business reasons for doing so. A plan proponent has significant flexibility, with the only clear limit on separate classification of similar claims being that such classification must be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims. In re Greystone III Joint Venture (Phoenix Mutual Life Insurance Company vs. Greystone III Joint Venture), 948 F.2d 134, at 139 (5th Cir. 1991). That is, a plan proponent may not "gerrymander" the classes to achieve an affirmative vote. Id.

Cases decided in the Fifth Circuit since Greystone have recognized the existence of valid business justifications for separate classification of like claims and has also established that separate classification may be justified based on evidence of a "non-creditor interest." See In re Briscoe Enterprises., Ltd., II (Heartland Federal Savings & Loan Assn. vs. Briscoe Enterprises,

Ltd., II, 994 F.2d 1160 (5th Cir. 1993). In Briscoe, the Fifth Circuit approved the debtor's separate classification of the City of Fort Worth from other unsecured creditors, noting that it was "distinct" from other creditors, including the one objecting to confirmation of the debtor's plan. In that case, the City's unique relationship with the debtor consisted of the debtor's participation in the City's urban housing program and its continued monthly contributions in rental assistance to the Debtor's tenants. The Fifth Circuit in Briscoe also cited with approval the opinion of the Sixth Circuit in the U.S. Truck case [In re U.S. Truck Company, Inc. (Teamsters National Freight Industry Negotiating Committee vs. U.S. Truck Company, Inc.), 800 F. 2d 581 (6th Cir. 1986)], which approved the separate classification of a labor union's claims from those of other impaired creditors, because of its "different stake in the future viability of the reorganized company". *Id.*, at 587.

Through case-by-case analysis, several lower courts in the Fifth Circuit have permitted separate classification where a particular group of claimants holds a non-creditor interest that may affect its voting on a plan. *See, e.g.*, In re The Heritage Organization, L.L.C., 2007 WL 2539351 (Bankr. N.D. Tex. 2007) [see collection of cases cited at Note *57]. For example, the Bankruptcy Court for the Northern District of Texas permitted separate classification for an unsecured claim of a direct competitor of the debtor who would benefit if the reorganization failed. In re Premiere Network Services, Inc., 333 B.R. 130 (Bankr. N.D. Tex. 2005).

"[A] careful reading of many of the non-creditor interest cases . . . suggests that the courts were not focused on the facts, but on *the voting motivation flowing from those facts*." Heritage Organization at *57 (emphasis added). Beginning with U.S. Truck, the definitive case on the non-creditor interest justification, courts have permitted separate classification where there is evidence that the claimaint will vote based upon its non-creditor interest in a case rather

7

than its economic interest as a creditor. It is not even necessary that there be an ongoing business, strictly speaking, to invoke the non-creditor interest justification. Heritage Organization at *57.

In Heritage Organization, the Bankruptcy Court for the Northern District of Texas held that separate classification was permissible and justified, with the court pointing to the facts that the separately-classified claimants: 1.) held a non-creditor interest based on their desire to avoid litigation exposure with respect to proceedings brought by the bankruptcy estate's trustee; and 2.) had every motivation to block approval of the plan for reasons having little to do with their status as creditors. 2007 WL 2539531 at *58. The group of claimants had a "virtually unique interest" in keeping the estate insolvent and unable to fund continued litigation against them. Id. Despite the fact that the separate classification featured unsecured claims receiving the same treatment, the court found that the facts of the case warranted such classification and that there had been no gerrymandering. Id.

In this case, Sweetwater holds a non-creditor interest that dominates its relationship to SOS Alliance's reorganization plan and justifies separate classification. As in Heritage Organization, the claimant here wishes to avoid litigation exposure and has every reason to block approval of the plan for reasons having little to do with its status as a creditor. At the October 1, 2007, disclosure statement hearing, Sweetwater's counsel explicitly stated the basis for its opposition and preference for conversion, which was further clarified by the Court. While, on the one hand, Sweetwater's counsel talks of how the Plan is lacking under the requirements of the Bankruptcy Code and the Plan's distribution is not enough, the exchange immediately following this discussion provides the real reasons for Sweetwater's opposition:

**Court**: And given if the case were converted what do *you* think you'd get out of the case?

**Counsel for Sweetwater**: Probably very little. But the reality is we get—right now, standing here today—nine percent or less . . . and the SOS gets to continue its operations, which frankly are very antagonistic to clients like mine.

**Court**: So, and correct me if I'm wrong, the benefit to your client is if they got converted and ultimately put out of business they'd be buying peace, for lack of a better word, from future litigation.

**Counsel for Sweetwater**: Yes . . .

SOS Alliance has further developed this issue in discovery and as the evidence at trial will demonstrate, Sweetwater and its principal, William T. Gunn, III, and their related entities, would benefit mightily from the demise of the Debtor in this case. Mr. Gunn and his umbrella company, Gunn-Whittington Development Company, through various legal entities, own or control extensive tracts of real property, held for development, in the Hill County of Central Texas, particularly in southwest Travis County, Hays County and Comal County. These are the geographic areas in which SOS Alliance has been most active in its legal advocacy and public policy work, in terms of challenging proposed development that will forever change, for the worse, the water resources and ecosystem of the Edwards Aquifer. SOS Alliance intends to call Mr. Gunn as a witness at the confirmation hearing, and will offer portions of his deposition testimony as evidence, to establish these facts.

As in the <u>Premiere Network Services</u> case, cited above Sweetwater is comparable to a direct competitor the debtor that would benefit if the reorganization fails. Sweetwater's over-arching economic interest has no relation to its status as a creditor but rather is related to a perceived future cost of SOS Alliance staying in business. This is clearly not a bankruptcy creditor's economic interest at all, and yet this reason powerfully pervades Sweetwater's voting

motivation. As recognized by the Northern District's synthesis of cases in <u>Heritage Organization</u>, this non-creditor interest and its influence on Sweetwater's vote is sufficient justification for separate classification.

Moreover, Sweetwater, its principal Mr. Gunn, and their related entities have a "virtually unique interest" in blocking SOS Alliance's Plan because Sweetwater is not just seeking to avoid general litigation exposure. Sweetwater and its representatives are aware of a specific post-judgment challenge available to SOS Alliance with regard to the visiting judge who sat on the original case from which the adverse judgment of attorney's fees was awarded. They also know that SOS Alliance provides legal assistance to landowners living downstream and adjacent to Sweetwater's large development on Bee Creek in their opposition to Sweetwater's proposed wastewater treatment facilities. If SOS Alliance is unable to continue in its present organization, it will likely lose any ability to pursue the challenge of the disqualified judge (which, if successful, would render the judgment wholly void) and to continue its work to protect the Hill Country and its vulnerable water resources from Sweetwater's and Gunn's development activities.

Sweetwater has explicitly acknowledged that it will not receive as much as a creditor in a liquidation of SOS Alliance than it would under this reorganization plan. Sweetwater realizes that under liquidation it would get "very little," if anything at all, in light of the priority of the existing security interest on SOS's property and the minimal value of the salable assets, even without regard to that security interest. Yet if Sweetwater is put in Class 6 with the General Unsecured Creditors, its non-creditor interest-based vote will dominate the Class and produce the inequitable result that the General Unsecured Creditors will recover nothing because of Sweetwater's non –creditor interest in terminating Debtor's existence and avoiding litigation

exposure. The General Unsecured Creditors, for whom there is no reason to believe will vote in any way except as economically-interested creditors, should not be put in this position to satisfy the spite of Sweetwater.

On the unique facts in this case, applicable Fifth Circuit law and principles of equity that govern bankruptcy proceedings, the Court should permit separate classification of Sweetwater's claim because it is justified and there is no evidence that SOS Alliance has engaged in gerrymandering of the classes in this case.

### *Even If Sweetwater's Claim Were Not Separately Classified, Its Vote Should Be Disqualified Under 1126(e) For Bad Faith Because Sweetwater Is Voting With an Ulterior Motive*

Under Bankruptcy Code Section 1126(e), the bankruptcy court may disqualify a creditor's acceptance or rejection that was not made in good faith. SOS Alliance has requested, pursuant to that Code section, that Sweetwater and its related entities be designated as an entity whose rejection of the First Amended Plan is not in good faith, and this will be an issue at trial.

The Bankruptcy Court for the Western District of Texas has established that "a creditor does not have an unfettered right to submarine a plan to serve a motive at best tangentially related to its position as a creditor, a so-called 'ulterior motive'." In re Landing Assocs., Ltd., 157 B.R. 791, 807 (Bankr. W.D. Tex. 1993). Voting with an "ulterior purpose" is defined as trying to secure some undue or unfair advantage—an advantage to which the creditor would not have otherwise been entitled—and may result in that vote being subjected to a bad faith designation. Id. at 802.

Situations supporting a finding of bad faith include 1) pure malice, 2) "strikes", 3) blackmail, and 4) purposeful destruction of a debtor's business. Id. [citing In re Federal Support Co., 859 F.2d 17, 19 (4th Cir. 1988)]. Voting to block a plan in order for the creditor to acquire a company for one's self will result in disqualification. Id. at 807-08. Similarly, efforts to put a

11

company out of business to realize a competitive gain will make a vote subject to 1126(e). Id. at 808. Even attempts to "hold up" the debtor for an improper gain have been held to be in bad faith. Id. It is not necessary that creditors are engaged in wrongdoing, as this is far too strict a standard for designation under Section 1126(e). Id. at 806-07.

Mixed motives, which are partly tangential to the creditor's status as creditor, may sometimes be acceptable and not necessarily indicate bad faith—for example, when a creditor votes for a plan because it wants the entity to survive to do future business with. See id. at 807. But when a vote is undertaken with an ulterior purpose that is unrelated to the reorganization process, and only incidentally related to the creditor's status *qua* creditor, section 1126(e) rightfully applies. Id.

Upon the same facts discussed above with respect to separate classification, Sweetwater is vulnerable to having its vote disqualified for bad faith. In voting against SOS Alliance's Plan, Sweetwater is not attempting to maximize its gain as a creditor or achieve a result based on a good faith reason. Like the designated creditor in Landing Associates, Sweetwater is acting on an ulterior motive to realize a competitive gain. In this case, Sweetwater has clearly stated that it sees a benefit in preventing SOS Alliance's reorganization so that it may avoid future litigation and essentially "hold up" the debtor's operations. This is not even incidentally related to Sweetwater's status as a creditor or the purposes of the reorganization process, and therefore 1126(e) rightfully applies.

As will be demonstrated at trial, Sweetwater's motives for opposing the Plan go beyond merely realizing a competitive gain or holding up SOS Alliance—Sweetwater actually intends to destroy SOS Alliance out of antagonism. There is no doubt that SOS Alliance engages in litigation or that such litigation has historically been contentious. But the contemplation of past

and future litigation (as well as past and future adverse publicity and heightened scrutiny from local and state regulatory bodies) is entirely unrelated to the purposes of this reorganization plan and the sort of malicious and mean-spirited voting motivation espoused by Sweetwater is entirely inappropriate under applicable bankruptcy law and Fifth Circuit precedent. Accordingly, the Court should disqualify Sweetwater's vote for bad faith under 1126(e).

For the reasons stated above, the Court should approve the classification of claims in SOS Alliance's First Amended Plan as being appropriate under the provisions of the Bankruptcy Code, applicable case law and the circumstances of this case, and should designate Sweetwater as an entity whose rejection of the First Amended Plan is not in good faith, pursuant to 11 U.S.C. §1126(e).

    /s/ B. Weldon Ponder, Jr.
B. WELDON PONDER, JR.
State Bar of Texas No. 16110400
Building 3, Suite 200
4601 Spicewood Springs Road
Austin, Texas 78759-7841
Phone (512) 342-8222 / Fax (512) 342-8444

ANDREW HAWKINS
Staff Attorney for Save Our Springs (S.O.S.) Alliance, Inc.
State Bar of Texas No. 24055636
221 East 9th Street, Suite 300
Austin, Texas 78701
Phone (512) 477-2320 / Fax (512) 345-8926

ATTORNEYS FOR THE DEBTOR IN POSSESSION, SAVE OUR SPRINGS ALLIANCE, INC.

**CERTIFICATE OF SERVICE**

I, B. Weldon Ponder, Jr., the attorney for the Debtor in Possession, hereby certify that on this 5th day of November, 2007, I served a true and correct copy of the foregoing brief upon the attorney for Sweetwater, Rebecca McElroy, Martinec, Winn, Vickers & McElroy, by faxing a copy of same to Ms. McElroy at (512) 476-0753.

                                        /s/ B. Weldon Ponder, Jr.
                                        B. Weldon Ponder, Jr.